Angel HERNANDEZ, Appellant,

v.

The STATE of Texas, State.

No. 2–94–070–CR.

Court of Appeals of Texas,
Fort Worth.

July 6, 1995.

Rehearing Overruled Aug. 10, 1995.

Discretionary Review Refused Nov. 1, 1995.

Earl R. Waddell, III, Fort Worth, for appellant on appeal only.

Tim Curry, Crim. Dist. Atty., Betty Marshall and Charles M. Mallin, Asst. Chiefs–Appellate Section, Danielle A. LeGault, Leslie Hardy and Mary Galus, Assts. Fort Worth, for appellee.

Before RICHARDS, MILLER and SHIRLEY W. BUTTS (Retired, Sitting by Assignment), JJ.

## OPINION

SHIRLEY W. BUTTS, Justice (Retired).

After a jury found appellant guilty of both offenses in a two-count indictment, it assessed punishment at ten years' imprisonment and a $10,000 fine for each offense: aggravated assault of a peace officer and attempt to take the peace officer's firearm. On appeal, we affirm the aggravated assault conviction and reverse and order an acquittal of the offense of attempt to take the firearm.

Appellant assigns five points of error, the first challenging the sufficiency of the evidence to support the conviction of aggravated assault of a peace officer.[1]

### Standard of Review

■ In examining the evidence to determine whether sufficient evidence supports a conviction, the appellate court must view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Moreno v. State*, 755 S.W.2d 866, 867 (Tex.Crim.App.1988).

■ This standard of review applies to both direct and circumstantial evidence cases. *Geesa v. State*, 820 S.W.2d 154, 159 (Tex.Crim.App.1991). Further, the review of sufficiency of the evidence must be measured against the jury charge. *See Jones v. State*, 815 S.W.2d 667, 670 (Tex.Crim.App.1991).

■ In his first point of error, appellant argues there is insufficient evidence to prove he caused bodily injury to the peace officer by striking him with his hand and fist and by pushing him.

Count two of the indictment alleged, in part, that appellant on the 22nd day of May 1993:

did then and there intentionally and knowingly cause bodily injury to F.C. Ferguson by striking F.C. Ferguson with the said defendant's hand and fist and by pushing F.C. Ferguson and the said F.C. Ferguson was then and there a peace officer in the lawful discharge of his official duty and the said defendant had been informed and knew F.C. Ferguson was a peace officer.

The application paragraph of the jury charge tracked the words of the indictment.

The evidence shows that on May 22, 1993, appellant lived with his girlfriend, Brenda Cox, in a house on Lipscomb in Fort Worth. The owner of the house was Jack Choate, and appellant did maintenance and yard work for him. After 9:00 p.m., on-duty Fort Worth Police Officer Ferguson was dispatched in his patrol car to that address to control a domestic disturbance. The officer testified he was in full police uniform and after parking his patrol car, he approached and saw Choate in the yard pointing to the house where a couple was arguing loudly. The officer saw appellant on the porch restraining Cox by her arm. He told Cox to come down into the yard, which she did, and he ordered appellant to sit on the porch. The officer said he first spoke with Cox, learning she had been assaulted by appellant.

Ferguson testified that appellant refused to sit down and became verbally abusive, saying "F___ you. I'm not doing anything." Ferguson informed appellant he was arresting him. Appellant told Ferguson to leave him alone, he did not want to go to jail, and he "didn't want to kill a cop." Then he turned and ran inside. The officer followed,

---

1. **Aggravated Assault.**
   (a) A person commits an offense if the person commits assault as defined in Section 22.01 of this code and the person:
   . . . .
   (2) . . . causes bodily injury to . . . a peace officer . . . when the person knows or has been informed the person assaulted is . . . a peace officer:

   (A) while the . . . peace officer . . . is lawfully discharging an official duty. . . .
   Act of June 15, 1989, 71st Leg., R.S., ch. 939, § 2, 1989 Tex.Gen.Laws 4003, *amended by* Act of June 19, 1993, 73rd Leg., R.S., ch. 900, § 1.01, 1993 Tex.Gen.Laws 3586, 3619 (current version at TEX.PENAL CODE ANN. § 22.01 (Vernon 1994)).

and appellant confronted him with his fists in a fighting position, telling him to get out. Ferguson took out his can of pepper mace, holding it behind him. He assumed a police training stance with his gun side facing away from appellant. Appellant said, "Do it now," and charged the officer.

Even though Ferguson sprayed appellant with the mace at close range, he kept coming and grabbed the officer's uniform at the shoulder. The officer got hold of appellant, who was shorter than he, and tried unsuccessfully to push him away. He continued to spray the mace, getting mace not only in appellant's eyes but also in his own eyes.

Ferguson testified that appellant hit him on the head, face, neck, and chest. They were "being knocked backwards and forwards" around the room. By radio the officer had earlier called for backup. As he was charged by appellant, he yelled into his radio, "I'm fixing to have to fight. Get to me." Ferguson said appellant became more combative, repeating, "I don't want to kill you. I don't want to kill a cop." After the officer made three calls, his radio was knocked from his hand. He said appellant was struggling to a point that was unbelievable.

Ferguson testified he was shoved into a corner by appellant against something and felt a terrible pain in his leg. Appellant continued to hit him on the head and face. The mace had blinded Ferguson and about that same time he "felt like he [appellant] was going to get my gun out of my holster."

They were both on the floor struggling when the officer shoved appellant off him. Although the mace blinded both appellant and Ferguson, he managed to hold appellant's arm and get one handcuff on, but appellant still resisted.

Another officer came in and assisted in subduing appellant and handcuffing him. Ferguson received immediate medical attention to his eyes and was taken by ambulance to a hospital. The officer testified about his injuries. He had contusions on his head and face; there was a bruise on his left leg "bigger than a grapefruit for over a week." He said he was in pain from the injuries. Although he did not remain at the hospital overnight, he returned to the clinic the following day for treatment.

Fort Worth Police Officer Donald Weiler testified he heard the calls for help from Ferguson and recognized when Ferguson's "emergency button" went off. He reached the scene in a few minutes and found the officer on the floor with appellant, who was "tossing and turning and kicking at him."

The defense theory was that appellant turned and went back into the house when Ferguson arrived, but Ferguson rushed after him and immediately sprayed him with the mace. The defense maintained appellant did not want to fight; he was trying to leave the room to get to the bathroom and wash the mace from his eyes and face.

Defense witness Jack Choate testified it was he who called the police at appellant's request because the girlfriend, Cox, was being abusive to appellant. However, the police tape reflected that another neighbor actually made the 911 call. Choate said the police officers did not wear uniforms—they wore T-shirts. Also, Choate testified appellant never said anything to Ferguson, who came uninvited into the house, grabbed appellant, slammed him on the couch, and sprayed him with mace for three or four minutes.

Appellant testified in his defense. He said his girlfriend was making a commotion in the front yard, and he asked Choate to call the police. The officer came into the house after him, held him, and hit him with a flashlight or something blunt. He indicated Ferguson sprayed mace on him without provocation. The officer tried to tackle him when he was going toward the bathroom to wash his face. He denied ever striking Ferguson or touching the gun or attempting to take the gun. The reason he was making noise when the other officers arrived was because he was in a state of shock and hysterical. Appellant maintained the only thing he said to Ferguson was to ask him why he was attacking appellant. He was questioned about when he was in the living room and Officer Ferguson came in, "you said he didn't say anything to you?" Appellant responded, "He did not say a word to me. If he would have said something to me, I would have been more than

pleased to respond in a human manner because I was not running from the law at all."

■ The jury, being the judges of the facts and the credibility of the witnesses, could choose to believe or not believe the witnesses or any portion of their testimony. *Sharp v. State,* 707 S.W.2d 611, 614 (Tex. Crim.App.1986), *cert. denied,* 488 U.S. 872, 109 S.Ct. 190, 102 L.Ed.2d 159 (1988). If there is evidence that establishes guilt beyond a reasonable doubt that the trier of fact believes, the judgment cannot be reversed on sufficiency of the evidence grounds. *Wicker v. State,* 667 S.W.2d 137, 143 (Tex.Crim. App.), *cert. denied,* 469 U.S. 892, 105 S.Ct. 268, 83 L.Ed.2d 204 (1984).

The Penal Code defines "bodily injury" as physical pain, illness, or any impairment of physical condition. Tex.Penal Code Ann. § 1.07(a)(8) (Vernon 1994). It is unrefuted and the record shows that the peace officer suffered contusions on his head and face and a large bruise on his left leg as a result of his struggles with appellant and that he suffered physical pain.

Under the proper standard of review, when we consider all the evidence presented in the light most favorable to the verdict, we determine the jury, as the trier of fact, could find beyond a reasonable doubt that appellant caused bodily injury to the peace officer by striking him with his hand and fist and pushing him. Therefore, the jury could find the evidence of the essential elements of the offense beyond a reasonable doubt. The evidence is sufficient to support the conviction for aggravated assault. The first point of error is overruled.

■ The next four points of error contest the sufficiency of the evidence to prove that appellant, with force and intent to harm, attempted to take the officer's firearm *by grabbing the firearm.* Count one of the indictment charged in pertinent part:

[Appellant] did then and there intentionally, and with intent to harm F.C. Ferguson, with force, take and attempt to take a firearm from F.C. Ferguson, a peace officer, known by the defendant to be a peace officer, by grabbing the officer's holstered

firearm and attempting to remove it from the holster.

■ The jury charge tracks the indictment in the application paragraph. *See* Tex.Penal Code Ann. § 38.14 (Vernon 1994). It is well settled that allegations not essential to constitute the offense and that might be entirely omitted without affecting the charge against the defendant and without detriment to the indictment are treated as mere surplusage, and they may be entirely disregarded. *Burrell v. State,* 526 S.W.2d 799, 802 (Tex.Crim. App.1975). Stated another way, if not descriptive of that which is legally essential to the validity of the indictment, unnecessary words or allegations may be rejected as surplusage. *Id.*

■ The exception to the general rule is where the unnecessary matter is descriptive of that which is legally essential to charge a crime. In that case the matter must be proved as alleged. *Id.*

■ The *Burrell* court further cited *Cowan v. State,* 41 Tex.Crim. 617, 56 S.W. 751 (1900), which held that where an indictment particularly describes the means used, such descriptive averments are part of the indictment and not surplusage. *Burrell,* 526 S.W.2d at 803. An allegation of the means by which an assault is committed, even though unnecessary, must be proved substantially as alleged. *Id.* (citing *Robinson v. State,* 60 Tex.Crim. 592, 132 S.W. 944 (1910)).

The grand jury in *Burrell* included in the indictment for assault with intent to murder a peace officer the means used, "by shooting him with a gun." The court noted these words were descriptive and explanatory of the assault and the intent and were, therefore, substantive allegations.

■ In the attempted murder case of *Windham v. State,* 638 S.W.2d 486 (Tex. Crim.App.1982), the indictment alleged that the defendant did attempt to cause the death by shooting at the individual with a gun. The elements of a criminal attempt are: (1) a person (2) with specific intent to commit an offense (3) does an act amounting to more than mere preparation (4) that tends but fails to effect the commission of the offense intended. *Id.* at 487. The court pointed out

the phrase "by shooting at her with a gun" is the allegation of the act amounting to more than mere preparation. Therefore, the "shooting" is the allegation of an element and must be proved. *Id.* In that case the act of "shooting at" is descriptive of the act (the criminal attempt) that must be alleged and proved and is not surplusage. *Id.* The court held that the State had the burden of proving the allegation in the indictment.

■ As alleged in the present case, article 38.14 of the Penal Code is an attempt offense, which requires the State to allege and prove the criminal act of attempt to take the peace officer's firearm. *See* TEX.CODE CRIM.PROC.ANN. art. 21.03 (Vernon 1989) (everything should be stated in an indictment which is necessary to be proved). Specifically, the indictment alleged the essential element of the criminal act of attempt amounting to more than mere preparation as follows: "by grabbing the officer's holstered firearm and attempting to remove it from the holster." As required, in the application paragraph the jury was charged:

Now, if you find from the evidence beyond a reasonable doubt that on or about the 22nd day of May, 1993, in Tarrant County, Texas, [appellant] did intentionally, and with intent to harm F.C. Ferguson, with force, *attempt to take a firearm from [the officer] ... by grabbing the officer's holstered firearm and attempting to remove it from the holster,* then you will find the defendant guilty of attempting to take a firearm from a peace officer as alleged in Count One of the indictment. [Emphasis added.]

Thus, the State was compelled to prove that appellant *grabbed the holstered firearm and attempted to remove it from the holster.* The common meaning of "grab" is to grasp or seize. It is defined as "to seize or snatch suddenly or to get possession of by unscrupulous methods ... a sudden grasp or seizure." WEBSTER'S UNABRIDGED DICTIONARY 790 (2d ed. 1979).

The evidence shows that as the two men struggled all about the room, the officer ended up in a corner; he testified that appellant had shoved or pushed him there, and his leg was injured. He said he felt his holster pushing against his leg and "could actually see Hernandez' hands at the top of my holster where the gun was in it." Ferguson later stated it was one hand, "I turned like this and saw [appellant's] hand on top of my holster." The officer testified he felt like appellant "was going to get my gun out of my holster." He countered this by utilizing the training method of pulling down his arm and holding his weapon, and he said that the holster had a thumb safety catch on it to prevent removal. He was asked by the prosecutor:

Q. ... The first time you felt it, where was his hand?

A. Just like this. He pulled it away.

Q. Okay. At any time, did he get it [the holster] open?

A. No, ma'am. There's a thumb safety break to keep someone from doing that. That's why you're able to pull against it from—keep [the holster] from being unsnapped.

Q. You never thought about unholstering your gun through this whole episode at all?

A. No, ma'am.

On cross-examination the officer was asked, after he repeated he felt the downward push against his leg:

Q. You don't know what caused that?

A. Well, when I felt that push, instincts, what I've been trained to do, as I explained earlier, I turned like this and saw the hand on top of my holster.

Q. But you just saw his hand there, right?

A. Yes, ma'am.

. . . .

Q. You felt the downward [push] and you felt a hand, but you're not telling us you saw fingers reaching and grabbing and—

A. Ma'am, what I'm telling you is, I saw the Defendant's hand on top of my holster and I done—I did what I was trained to do, which was pull.

In jury argument the prosecutor told the jury the State had to prove that appellant attempted to take the officer's firearm.

You heard testimony from Officer Ferguson about feeling the force on his leg. About him grabbing the safety strap. What's the safety strap there for, ladies and gentlemen, except to protect his gun? This Defendant tried to take his gun away.

The defense counsel pointed out that the officer never said that he saw the hand on the gun or that appellant touched the gun belt.

The prosecutor in the closing argument also stated:

You tell this Defendant you don't *grab at an officer's gun.* You don't look an officer in the face like this and say, "I'm going to kill you," or "Don't make me kill a cop," more than once and *grab at his gun* and get found not guilty. [Emphasis added.]

However, in neither the indictment nor the application paragraph, which bound the jury, was the charge that appellant did "grab at" the gun. The indictment alleged that appellant attempted to take a firearm from the peace officer *by grabbing the officer's holstered firearm and attempting to remove it from the holster.* The jury was charged that unless they found beyond a reasonable doubt, or if they had a reasonable doubt, that appellant attempted to take the firearm from the peace officer *by grabbing the officer's holstered firearm and attempting to remove it from the holster,* the jury must find appellant not guilty of that offense.

There is no evidence in the record that appellant grabbed the firearm and attempted to remove it from the holster. At most, the evidence shows that at one time appellant's hand was on top of the holster—not the firearm. And the officer quickly took action to end the touching of the holster. The State failed to meet its burden of proving the essential element of the attempt offense, that is, the act amounting to more than mere preparation, which was that appellant "grabbed" the firearm. Therefore, the trier of fact could not have found the essential element beyond a reasonable doubt.

Because a verdict of "guilty" necessarily means the jury found evidence of the offense on which it was authorized to convict, the sufficiency of the evidence is measured by the charge that was given. It follows that if evidence does not conform to the instruction given, it is insufficient as a matter of law to support the only verdict of "guilty" that was authorized. *Boozer v. State,* 717 S.W.2d 608, 610–11 (Tex.Crim.App.1984).

In the present case there is insufficient evidence to support the essential element of the attempt offense as alleged in the indictment and the charge to the jury. Points of error two through five are sustained.

The judgment of conviction for aggravated assault is affirmed. The judgment of conviction for attempting to take a peace officer's firearm is reversed, and the cause is remanded to the trial court for entry of a judgment of acquittal. *See Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *Greene v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978); *Windham,* 638 S.W.2d at 487–88.

MILLER (Sitting by Assignment), J., dissents without written opinion.