NO. 07-10-0219-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

SEPTEMBER 28, 2011

_____

KEVIN WADE FREEMAN, APPELLANT

v.

THE STATE OF TEXAS,  APPELLEE

_____

FROM THE 46TH DISTRICT COURT OF WILBARGER COUNTY;

NO. 11,375; HONORABLE DAN MIKE BIRD, JUDGE

_____

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

**MEMORANDUM OPINION**

On February 25, 2010, a jury found Appellant, Kevin Wade Freeman, to be competent to stand trial in a criminal proceeding.  Thereafter, on April 7, 2010, a different jury, in a separate proceeding, convicted Appellant of the third degree felony offense of assault against a public servant.[1]   That jury also found two enhancements to be true and it assessed Appellant's sentence at forty years confinement.  Appellant asserts six points of error:   (1)-(2) the State's evidence was insufficient to prove

---
[1]Tex. Penal Code Ann. § 22.01(a), (b)(1) (West 2011).

Appellant intentionally, knowingly, or recklessly caused bodily injury to Joe Fitzgerald, a public servant, by hitting Fitzgerald with his hand; (3) the trial court erred by permitting Fitzgerald to testify whether Appellant knew Fitzgerald was employed at the Wilbarger County Jail; (4)-(5) the trial court erred by denying Appellant's motion for a directed verdict because there was no evidence Fitzgerald was lawfully discharging any official duty when the alleged assault occurred; and (6) the jury's competency verdict was against the greater weight and preponderance of the evidence. We affirm.

**Points of Error One and Two -- Sufficiency of the Evidence**

**A.      Standard of Review**

The only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense the State is required to prove beyond a reasonable doubt is the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 33 S.Ct. 2781, 61 L.Ed.2d 560 (1979). *See Brooks v. State*, 323 S.W.3d 893, 912 (Tex.Crim.App. 2010). Under that standard, in assessing the sufficiency of the evidence to support a criminal conviction, this Court considers all the evidence in the light most favorable to the verdict and determines whether, based on that evidence and reasonable inferences to be drawn therefrom, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319; *Brooks*, 323 S.W.3d at 912. This standard gives full play to the responsibility of the trier of fact to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319. *See Hooper v. State*, 214 S.W.3d 9, 15 (Tex.Crim.App. 2007).

Further, the trier of fact is the sole judge of the weight of the evidence and credibility of the witnesses; Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Margraves v. State*, 34 S.W.3d 912, 919 (Tex.Crim.App. 2000), and we may not re-evaluate the weight and credibility determinations made by the fact-finder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex.Crim.App. 1999). Thus, we resolve any inconsistencies in the evidence in favor of the verdict. *Curry v. State*, 30 S.W.3d 394, 406 (Tex.Crim.App. 2000).

## B.    Assault against a Public Servant

To establish the felony offense of assault against a public servant, the State must prove: (1) a person, (2) intentionally, knowingly, or recklessly, (3) causes bodily injury to another, (4) who the actor knows is a public servant (5) while that public servant is lawfully discharging an official duty. *See* Tex. Penal Code Ann. § 22.01(a), (b)(1) (West 2011). See *Hall v. State,* 158 S.W.3d 470, 473 (Tex.Crim.App. 2005). Here, the indictment alleged that on or about December 2, 2009, Appellant did "intentionally, knowingly, or recklessly cause bodily injury to Joe Fitzgerald by hitting the said Joe Fitzgerald with [Appellant's] hand, and the [Appellant] did then and there know that the said Joe Fitzgerald was then and there a public servant, to-wit: a jailer at the Wilbarger County Jail . . . and that the said Joe Fitzgerald was then and there lawfully discharging an official duty, to-wit: escorting [Appellant] to his jail cell." The indictment also pled two prior felony convictions as enhancements. Appellant subsequently pled "true" to those enhancements.

Appellant contends there is no evidence his hand touched Fitzgerald's face or that he intentionally, knowingly, or recklessly struck Fitzgerald in the face with his hand.

3

In support, Appellant testified he did not strike Fitzgerald but was pushed into his cell at the jail and, although he intended to spit on Fitzgerald in a subsequent incident, his spit fell to the floor and did not strike Fitzgerald.

The State's evidence established that, on the date in question, Appellant had a visitor. During his visit, Appellant told the visitor that "he was going to end up doing something stupid that day that would cost him his visits and his phone calls." Following the visit, Appellant was escorted back to his cell by Wilbarger County Deputy Sheriff Brandon Bell, Deputy J. R. Ritter and Joe Fitzgerald, the jail administrator. Bell testified that when the group reached the cell, Appellant hit Fitzgerald "out of nowhere" and that "it didn't look like he hit him with a fist, but it wasn't a slap, either." Bell further testified that afterwards Fitzgerald's eye immediately turned red and within minutes started to swell. As Fitzgerald was holding his eye and walking away, Bell heard Appellant state: "Did you see his-did you see his bitch ass turn red when I slapped him?"

Fitzgerald testified that, after they escorted Appellant to his cell, he opened the door for Appellant "and that's when he struck me. I didn't see it coming."[2] Fitzgerald testified his eye turned red and later, there was a dark spot. He saw a doctor that day and was given an anti-inflammatory. When Fitzgerald later returned to the jail that day, he encountered Appellant a second time. During that encounter, Fitzgerald testified Appellant spit on his shoulder. In addition, weeks later while Fitzgerald was overseeing a visit between Appellant and his doctor, Appellant disagreed with Fitzgerald over a jail

---

[2]Appellant testified that, at the time of the incident, Fitzgerald had told him that, if he didn't get into his cell, he was going to take away Appellant's right to visitations and Appellant was arguing with Fitzgerald about his telephone privileges.

4

policy and stated in a recorded conversation: "That's bullshit. And you wonder why I slapped your bitch ass."

At trial, the term "public servant" was defined in the jury charge as "a person . . . employed, or otherwise designated as one of the following . . . : an officer, employee, or agent of government." Fitzgerald testified that, as jail administrator, he runs the day-to-day operations of the jail and interacts with inmates on a daily basis in a variety of situations. He testified he sometimes escorted Appellant to and from visitations and doctor's appointments. When Appellant struck him in the face, he was escorting Appellant back to his cell after a visitation accompanied by two deputies while wearing his uniform, i.e., a polo shirt that bore a sheriff's star and the inscription "Wilbarger County Jail."[3] Moreover, Appellant testified at trial that he knew Fitzgerald worked at the jail and sometimes escorted him to doctor's appointments.

Granted, even though Appellant's version of what occurred during the incident at his jail cell and during the subsequent encounter differs markedly from the testimony of Bell and Fitzgerald, the jury listened to the testimony and by their verdict evidently found Bell's and Fitzgerald's testimony more credible. It is the jury's sole responsibility to judge the credibility of witnesses, and the jury was free to believe or disbelieve any portion of a witness's testimony. *Sharp v. State,* 707 S.W.2d 611, 614 (Tex.Crim.App. 1986), *cert. denied,* 488 U.S. 872, 109 S.Ct. 190, 102 L.Ed.2d 159 (1988). We must give great deference to the jury's findings of fact. *Laster v. State,* 275 S.W.3d 512, 518 (Tex.Crim.App. 2009).

---

[3]A person "is presumed to have known the person assaulted was a public servant . . . if the person was wearing a distinctive uniform or badge indicating the person's employment as a public servant . . . ." Tex. Penal Code Ann. § 22.01(d) (West 2011).

Further, Appellant's own statements before and after the incident when coupled with testimony that Fitzgerald's eye immediately turned red, swelled and required medical attention are sufficient evidence to establish that Appellant intentionally, knowingly or recklessly struck Fitzgerald in the face causing bodily injury. *See Ortega v. State*, 207 S.W.3d 911, 919-20 (Tex.App.--Corpus Christi 2006, no pet.).[4] The record further supports the jury's conclusion that, at the time of the incident, Appellant knew Fitzgerald was a public servant and that he was lawfully discharging an official duty. Appellant's first and second points of error are overruled.

**Point of Error Three -- Opinion Testimony**

Appellant contends the trial court reversibly erred in admitting Fitzgerald's testimony that Appellant knew he was employed as a public servant. We disagree. An appellate court "[may] not reverse a ruling based on nonconstitutional error that does not affect "substantial rights" of an appellant. *Neal v. State*, 256 S.W.3d 264, 284-85 (Tex.Crim.App. 2008), *cert. denied, ___* U.S. *___*, 129 S.Ct. 1037, 173 L.Ed.2d 471 (2009). *See* Tex. R. App. P. 44.2(b). "If, after examining the record as a whole, we determine that any error had a slight or no effect on the jury, then we will not overturn the trial court's ruling." *Neal*, 256 S.W.3d at 285 (citing *Morales v. State*, 32 S.W.3d 862, 867 (Tex.Crim.App. 2000)). Further, "'the presence of overwhelming evidence of guilt plays a determinative role' in this analysis." *Neal*, 256 S.W.3d at 285 (citing *Motilla v. State*, 78 S.W.3d 352, 356 (Tex.Crim.App. 2002)).

---

[4]"Bodily injury" means "physical pain, illness or any impairment of physical condition." Tex. Penal Code Ann. § 1.07(a)(8) (West 2011). It has been held that the Penal Code definition of "bodily injury" is "purposefully broad and seems to encompass even relatively minor physical contact so long as they constitute more than mere offensive touching." *Wawrykow v. State*, 866 S.W.2d 96, 99 (citing *Lane v. State*, 763 S.W.2d 785, 786 (Tex.Crim.App. 1989). *See also Hernandez v. State*, 903 S.W.2d 109, 113 (Tex.App.--Fort Worth 1995, pet. ref'd) (contusions on face and bruise on leg of officer constitute "bodily injury"); *Wawrykow*, 866 S.W.2d at 99-100 ("bodily injury" occurred when officer struck in the face).

Assuming without deciding that the trial court erred in admitting Fitzgerald's opinion testimony that Appellant knew he was a jail employee and thus a public servant, such evidence was harmless in light of the overwhelming evidence detailed above. Appellant's third point of error is overruled.

**Point of Error Four and Five -- Lawfully Discharging an Official Duty**

Appellant also challenges the sufficiency of the State's evidence that Fitzgerald was "lawfully discharging an official duty" when he was assaulted by Appellant.[5] As stated in the preceding section, the evidence that Fitzgerald was a public servant or a county jailer when he was assaulted is overwhelming. In addition to running the day-to-day operations of the jail and interacting with inmates on a daily basis, Fitzgerald testified that, as part of those duties, he escorted prisoners from their cells to visitation and back again. Tammy Spangler, a jail employee, testified that, when Fitzgerald issued a memorandum establishing the circumstances under which Appellant could be released from his cell, deputies and jailers followed his instructions.[6] Fitzgerald testified that he escorted Appellant during his visitation on December 2, 2009, accompanied by two deputies while wearing a jail uniform bearing a sheriff's badge and the inscription "Wilbarger County Jail." From this evidence, a rational juror could have found beyond a reasonable doubt that Fitzgerald, as a county jail administrator, not only supervised the conditions under which prisoners were allowed to leave their cells but participated in escorting prisoners as part of his day-to-day responsibilities. As such, a rational juror

---

[5]On appeal, we treat Appellant's challenge of the trial court's ruling on a motion for directed verdict as a legal sufficiency challenge. *See Moff v. State,* 131 S.W.3d 485, 488-89 (Tex.Crim.App. 2004). We refer the parties to our discussion of Points of Error One and Two for a statement of the standard of review.

[6]On November 20, 2009, Fitzgerald issued a memorandum to jailers indicating that Appellant would not be outside of his cell unless two deputies were present.

could have found beyond a reasonable doubt that, at the time of the assault, Fitzgerald was lawfully discharging an official duty, i.e., escorting a prisoner to his cell. *See Hall*, 158 S.W.3d at 475. Appellant's fourth and fifth points of error are overruled.

### Point of Error Six -- Competency to Stand Trial

Appellant asserts the jury's verdict from the competency hearing is against the great weight and preponderance of the evidence.[7] In determining whether a jury's finding is against the great weight and preponderance of the evidence, an appellate court must consider all of the evidence and set aside the verdict only if the evidence is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *See Morris v. State,* 301 S.W.3d 281, 292 n.35 (Tex.Crim.App. 2009).

A person is incompetent to stand trial if the person does not have "sufficient present ability to consult with the person's lawyer with a reasonable degree of rational understanding" or "a rational as well as factual understanding of the proceedings against the person." Tex. Code Crim. Proc. Ann. art. 46B.003(a) (West 2006). A defendant's competency to stand trial is a question of fact to be determined by the competency jury; *Morris,* 301 S.W.3d at 287, and is presumed competent to stand trial unless he proves he is not competent by a preponderance of the evidence. *Id.* at 285. Evidence relevant to these issues include whether a defendant can (1) understand the charges against him and the potential consequences of the pending criminal proceedings, (2) disclose to counsel pertinent facts, events, and states of mind, (3) engage in a reasoned choice of legal strategies and options, (4) understand the

---

[7]While we note that the Clerk's Record does not include a copy of the Court's Charge or the jury's verdict from the competency proceeding, and it does not include a judgment or other court order expressly reflecting that verdict, for purposes of this appeal, we will presume without expressly finding that the judgment being appealed implicitly reflects that verdict and that Appellant has preserved error.

adversarial nature of criminal proceedings, (5) exhibit appropriate courtroom behaviour, and (6) testify. *See* Tex. Code Crim. Proc. Ann. art. 46B.024 (West 2006).

At the competency hearing, Appellant's evidence consisted of the testimony of Evan Sanders, a person who served time with Appellant in the Wilbarger County Jail; Opal Freeman, Appellant's mother; and Dr. Robert Borchardt, Jr., a physician who works for the jail and treated Appellant for approximately a year. While they were incarcerated together Sanders associated with Appellant on a daily basis and they discussed the charges pending against him. Specifically, they discussed whether he should plead or go to trial. Sanders observed that Appellant understood how the court system operated and communicated with him about possible case strategies he might undertake in his case. He further observed that Appellant seemed coherent and made sense. He testified that, although Appellant had a problem with authority, he did not witness anything that indicated to him that Appellant was having difficulty understanding what the authorities wished Appellant to do.

The testimony of Appellant's mother consisted primarily of historical evidence pertaining to the fact that Appellant had suffered from psychological problems as a child. She testified that his psychological issues subsided after he was married at age eighteen, but resurfaced when his wife died. At that time he began using a lot of drugs and stealing things. She testified that he was imprisoned for six years and, shortly after his release, began engaging in behaviors similar to those he had engaged in before going to prison. She also testified that he knew what a judge and attorney were, understood the purpose of the competency hearing and knew what the charges were against him.

9

Dr. Borchardt testified that he had seen Appellant for approximately a year and prescribed a number of anti-psychotic medications and major tranquilizers for him. The medications were primarily aimed at reducing Appellant's aggression and anger. He also testified that the prescription drugs "sedated him, but not very much. He could stand up and talk to you and carry on a pretty decent conversation, even with the medication." Although such drugs could affect one's memory, he testified that he didn't find that to be true with regards to Appellant. Rather, he testified that Appellant rationally discussed his memories. He also testified that, although the quantity of drugs required to keep Appellant's aggression under control was not normal, he observed that Appellant "could take a whole basketful of [drugs] and [it] didn't seem to bother him. He is unusual in that respect." Dr. Borchardt also agreed with the State that Appellant exaggerated his symptoms in an attempt to deflect responsibility. He was not asked and did not opine on whether Appellant was competent to stand trial.

Dr. Timothy Nyberg, a clinical and forensic psychologist, testified for the State. He had conducted a competency examination of Appellant in December 2009 and reached the conclusion that Appellant was competent to stand trial. He opined that Appellant had sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and had a rational as well as factual understanding of the proceedings against him. He based his opinion on a basic history obtained from Appellant and a mental status examination. He noted that Appellant communicated, responded to questions appropriately, talked about the criminal charges pending against him and understood the nature of those charges. From the information volunteered by Appellant, Dr. Nyberg believed Appellant "was pretty familiar with the way things operated in court" and understood the roles of judge and attorney and how

10

their roles related to the offense. From discussions with jail personnel, he learned that Appellant had picked up additional charges while in jail and was uncooperative with jail personnel. He also described the course of medical treatment and medicines that were prescribed for Appellant. Although he declined to opine on how any dosage of the medications could affect Appellant's capacity, he testified that he did not notice an appreciable effect on Appellant from the medications. Once he determined that Appellant met the statutory requirements for competency, he felt no need to conduct any further testing for mental illnesses, mental retardation or mental disabilities.

The State also called Appellant's girlfriend who had dated Appellant for approximately a year and a half before he was incarcerated. After he was incarcerated, she visited him and received telephone calls regularly until the incident of December 2, 2009. She testified that, while they were dating, Appellant performed necessary daily tasks, held down jobs, and knew what was going on around him. She testified Appellant knew how the court system worked and spoke with her about his mental issues in connection with the charges pending against him. She testified that he told her "that he was going to act crazy . . . when he came to court" and that the purpose of him acting crazy was "[t]o see if he could get out of what he did."

As we have indicated above, there was substantial direct evidence at trial that Appellant committed the offense for which he was charged and tried, i.e., two eye witness accounts of the incident and two incriminating statements made by Appellant (one tape recorded). Throughout the trial, Appellant conducted himself appropriately while responding to the inquiries and directions of the trial judge. His testimony was

11

responsive, coherent and intelligent.[8]  He appeared to understand the charges against him, the nature of the proceedings, the gravity of the proceedings, and the role of the different court officers.  In an initial pretrial proceeding, he disagreed with his attorney on trial strategy and whether to call, or not call, certain witnesses.

Having reviewed the trial transcripts relevant to Appellant's competency claim, we find the evidence establishes that:  (1) Appellant was able to consult with his attorney with a reasonable degree of rational understanding; (2) he did have a rational understanding of the consequences of the proceedings against him; and (3) at the time of the trial, he did have a factual understanding of the basis of the State's claims. Accordingly, we find that the jury's verdict rejecting Appellant's claim of incompetency was not against the great weight and preponderance of the evidence.  Appellant's sixth point of error is overruled.

## Conclusion

The trial court's judgment is affirmed.


Patrick A. Pirtle
Justice


Do not publish.

---

[8]Prior to testifying, Appellant testified he understood that his attorney believed his testimony was a strategic and tactical error but disagreed and wanted to testify anyway.  He also testified that he understood the trial court's admonishments and cautionary statements but wanted to testify even though by doing so he would open the door to testimony on topics detrimental to his case.