# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-07-00586-CR
NO. 03-07-00587-CR

**Claude Wayne Chadwick, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 51ST JUDICIAL DISTRICT
NOS. A-04-0990-S & A-04-0991-S, HONORABLE V. MURRAY JORDAN, JUDGE PRESIDING**

# O P I N I O N

These two cause numbers were consolidated for trial. In cause number A-04-0990-S, a jury found appellant Claude Wayne Chadwick guilty of assaulting a public servant. *See* Tex. Penal Code Ann. § 22.01(b)(1) (West Supp. 2008). In cause number A-04-0991-S, the jury found Chadwick guilty of attempting to take a weapon from a peace officer. *See id.* § 38.14 (West Supp. 2008). The jury sentenced Chadwick to fifty years' imprisonment for the assault offense and twenty years' imprisonment for the offense of attempting to take a weapon from a peace officer. The trial court pronounced sentence in accordance with the jury's verdict. On appeal, Chadwick argues that the trial court erred when it denied his request to proceed pro se and that the evidence was legally and factually insufficient to support the verdicts. Because we determine that the trial court did not err in denying Chadwick's motion to proceed pro se and that the evidence was legally and factually sufficient to support the verdicts, we affirm the convictions.

## BACKGROUND

On the morning of February 11, 2004, Chadwick was at the Tom Green County Courthouse waiting to see a judge on an unrelated case. Chadwick was an inmate in the county jail and was being guarded in an otherwise empty courtroom by a transport officer, Deputy Sheriff Jerry Rychlik. Chadwick was restrained by a chain that circled his arms and chest, limiting the mobility of his arms, and by handcuffs.

Rychlik testified that he was informed, late in the morning, that the judge was not going to see Chadwick. According to Rychlik, when he told Chadwick they were going to return to the jailhouse without seeing the judge, Chadwick responded, "That's bullshit. I'm going to see the judge." Rychlik testified that he told Chadwick to calm down and return with him to the jail, to which Chadwick responded, "You better get some backup, because I'm going to see the judge, Jerry." According to Rychlik, he walked over to Chadwick and reached out, at which point Chadwick "lunged" at Rychlik. Rychlik testified:

> Well, when he lunged at me, he pinned me against the chair rail there in the courtroom. And I was in a position where I could not fall over, I could not—I couldn't go nowhere. And I felt pressure on my gun. Well, I quickly pushed—I pushed down as—as hard as I could because he was trying to get my gun.

In the ensuing struggle, Rychlik testified that Chadwick was using both hands, which were handcuffed together, to pull up on Rychlik's gun, which was snapped into Rychlik's holster on the right side of his waist. At the same time, Rychlik testified, he felt Chadwick kick his left leg several times. After a few seconds of struggle, Rychlik saw Bailiff Philip Race in the hall and called out to him for help. Rychlik testified that Race came into the room and attempted to pull Rychlik away

2

from Chadwick, and when that did not work, Race instead pulled Chadwick off of Rychlik and all three of them tumbled to the floor. At that point, Rychlik noticed that his gun holster was unsnapped, though the gun was never removed from the holster.

Race testified that he had been patrolling the courthouse hallway when he overheard Chadwick arguing with Rychlik about returning to the jail and that he decided "to stay real close" in case there was trouble. Race testified that he did not see the beginning of the alleged altercation, but that "the next thing [he] knew, [he] looked in the door and Jerry was bent over" the railing that separated the gallery from the bar tables. According to Race, Chadwick was pushing up against the right side of Rychlik's body, which made Race concerned that Chadwick could take Rychlik's gun. Race testified that he went into the courtroom and grabbed Rychlik's left leg to try to pull him away from the railing. When Rychlik exclaimed, Race then pushed Chadwick away from Rychlik before using a pressure point to "take [Chadwick] down."

Chadwick was initially found incompetent to stand trial for the charges in the instant prosecution and was committed to Big Spring State Hospital in June 2004. In December 2006, the Texas Department of State Health Services issued a report concluding that Chadwick's competency had been restored and he was returned to Tom Green County. At Chadwick's request, he was examined by a defense expert, who also concluded that Chadwick was competent. On the basis of these reports, the trial court found Chadwick competent to stand trial on August 28, 2007. The day the case was set for pre-trial and jury voir dire, Chadwick initially refused to come to the courthouse. Chadwick's attorney told the trial court that Chadwick had also refused to speak with him the night before or cooperate in preparing his defense and requested that Chadwick be declared incompetent. The court denied the request. Chadwick agreed to come to the courthouse after being permitted to

3

make a video statement. When he arrived, Chadwick expressed displeasure with his appointed counsel and requested to proceed pro se. The trial court denied his request and instructed defense counsel to continue on the case.

The jury found Chadwick guilty of assaulting a public servant and of attempting to take a weapon from a peace officer. This appeal followed. Chadwick argues that the trial court erred in denying his request to proceed pro se and that the evidence was legally and factually insufficient to support the verdicts.

## DISCUSSION

*Self-Representation*

In his first two points of error, Chadwick argues that the trial court erred when it refused his request to represent himself. Chadwick contends that, because he was found competent to stand trial, he was therefore also competent to waive his right to counsel and proceed pro se. The State counters that the court did not err in denying Chadwick's request to represent himself, arguing that Chadwick's request was made for the purpose of disrupting and delaying the trial and that Chadwick, while competent to stand trial, was not competent to represent himself.[1]

Criminal defendants have a right to refuse counsel and represent themselves at trial under the sixth and fourteenth amendments to the federal constitution. *See* U.S. Const. amend. VI (right to counsel), amend XIV, § 1; *see also Faretta v. California*, 422 U.S. 806, 818-19 (1974)

_____

[1] The State requested leave to file a supplemental brief on November 17, 2008. That motion is hereby granted. However, we did not consider Appendix B to that brief, which was not in the record filed by the trial court. *See Quorum Int'l v. Tarrant Appraisal Dist.*, 114 S.W.3d 568, 572 (Tex. App.—Fort Worth 2003, pet. denied) (appellate courts are bound by record as filed).

4

(right to self-representation implied in sixth amendment; sixth amendment applies to states through due-process clause of fourteenth amendment); *Ex parte Winton*, 837 S.W.2d 134, 135 (Tex. Crim. App. 1992); *Funderburg v. State*, 717 S.W.2d 637, 641-42 (Tex. Crim. App. 1986). The right to self-representation is also protected by state law. *See* Tex. Const. art. I, § 10 (guaranteeing criminal defendant "the right of being heard by himself or counsel"); Tex. Code Crim. Proc. Ann. art. 1.051(f) (West Supp. 2008) (allowing criminal defendants to "voluntarily and intelligently waive in writing the right to counsel"). This right is not unlimited; there is no right to "engag[e] in serious and obstructionist conduct" or to "abuse the dignity of the courtroom." *Faretta*, 422 U.S. at 834-35 n.46; *see also Winton*, 837 S.W.2d at 135-36.

The United States Supreme Court recently rejected the argument that if a defendant is mentally competent to stand trial, he is necessarily competent to represent himself as well. *Indiana v. Edwards*, ___ U.S. ___ ,128 S.Ct. 2379, 2386-87 (2008).[2] While the test for competence

---

[2] Prior to *Indiana v. Edwards*, ___ U.S. ___ , 128 S.Ct. 2379, 2386-87 (2008), Texas courts judged competency to stand trial and competency to waive the right to counsel under the same standard. *See Ex parte Mines*, 26 S.W.3d 910, 912 (Tex. Crim. App. 2000) ("The competency standard for pleading guilty or waiving the right to counsel at a criminal trial is not higher than the competency standard for standing trial . . . .") (citing *Godinez v. Moran*, 509 U.S. 389, 399 (1993)). The decision to apply the same standard to both inquiries was based on the Supreme Court's prior ruling in *Godinez,* in which it "reject[ed] the notion that competence to plead guilty or to waive the right to counsel must be measured by a standard that is higher than (or even different from)" the standard for competence to stand trial. *Godinez*, 509 U.S. at 398.

In *Edwards*, however, the Supreme Court distinguished *Godinez*, where the defendant sought to waive the right to counsel and then plead guilty, from cases where the defendant seeks to waive the right to counsel and then proceed to trial. *Edwards*, 128 S.Ct. at 2385. Because Chadwick sought to conduct the trial himself, we are bound by *Edwards*, wherein the Court held that "the Constitution permits States to insist upon representation by counsel for those competent enough to stand trial . . . but who still suffer from severe mental illness to the point where they are not competent to conduct trial proceedings themselves." *Id.* at 2388; *see also Guerrero v. State*, ___ S.W.3d ___, Nos. 04-07-00583-CR, 04-07-00584-CR, 2008 Tex. App. Lexis 6119, at *7

5

to stand trial asks whether a defendant has sufficient present ability to "consult" with his lawyer and "assist" in preparing a defense, the test for competence to proceed pro se is whether a defendant has the ability to present his own defense without the assistance of counsel. *Id.* at 2386; *Guerrero v. State*, ___ S.W.3d ___, Nos. 04-07-00583-CR, 04-07-00584-CR, 2008 Tex. App. Lexis 6119, at *7 (Tex. App.—San Antonio Aug. 13, 2008, pet. filed) (noting that under *Edwards* "competence to represent oneself during trial proceedings involves a higher standard than that required for competence to stand trial"). When faced with a request to proceed pro se by a defendant with a history of serious mental illness, trial courts may "take realistic account of the particular defendant's mental capacities by asking whether a defendant who seeks to conduct his own defense at trial is mentally competent to do so." *Edwards*, 128 S.Ct. at 2387-88.

Chadwick argues that the trial court's refusal to allow him to proceed pro se cannot be upheld under *Edwards* because the trial court failed to issue a finding that he was incompetent to represent himself. However, where a trial court's decision rests on a determination of facts and the trial court does not issue findings of fact, we will imply any findings supported by the evidence and necessary to support the trial court's order. *See Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997) ("[I]n reviewing a trial court's ruling on an 'application of law to fact question,' the appellate courts should view the evidence in the light most favorable to the trial court's ruling."); *cf. Gutierrez v. State*, 221 S.W.3d 680, 687 (Tex. Crim. App. 2007) (imply findings when reviewing

---

(Tex. App.—San Antonio Aug. 13, 2008, pet. filed) (noting that, under *Edwards*, "competence to represent oneself during trial proceedings involves a higher standard than that required for competence to stand trial"). *But see Resto v. State*, No. 10-07-00230-CR, 2008 Tex. App. Lexis 7021, at *4 (Tex. App.—Waco Sep. 17, 2008, no pet. h.) (mem. op., not designated for publication) (stating that *Edwards* permitted, but did not require, a state to adopt a different standard, and thus "*Edwards* does not overrule or even challenge that prior law").

6

suppression of evidence determination). The trial court, which has the opportunity to observe the defendant's demeanor and will often have also conducted the competency hearing, is "best able to make more fine-tuned mental capacity decisions, tailored to the individualized circumstances of a particular defendant." *Edwards*, 128 S.Ct. at 2387.

The trial court had sufficient evidence before it to support a finding that Chadwick was incompetent to represent himself. At the August 2007 pre-trial hearing and on the first day of trial, Chadwick interrupted his attorney several times and personally argued several motions that his attorney did not adopt. This gave the trial court the opportunity to observe the extent of Chadwick's ability to conduct his own defense at trial. Chadwick jumped from one topic to another, devoting most of his time to ad hominem attacks on the prosecutor, the judge, the bailiffs, judges from his prior cases, and other county and state officials. Many of his arguments were simply conclusory, while others were incoherent. For example, in trying to persuade the court that the prosecutor should be recused, Chadwick argued:

> I'm trying to bring together the thought, Judge, that his misconduct will need to be questioned in the grand jury matters and in many matters, so it's—it's relevant to him. It's just bringing up different topics required to show multiple areas and collateral consequences from him and repetition of it reoccurring repeatedly.

The trial court also had before it several incoherent written motions that Chadwick had filed pro se.

Given all of the foregoing, the trial court could have reasonably concluded that Chadwick was not competent to represent himself and that, if he had been allowed to do so, he would not have been able to receive a fair trial. *See Edwards*, 128 S.Ct. at 2387. That the trial court came to this conclusion is supported by the trial court's notation in its docketing sheet that the court

"could not properly conduct trial with defendant representing himself."[3] We therefore overrule Chadwick's first two points of error.

*Legal and Factual Sufficiency*

Chadwick next argues that the evidence was legally and factually insufficient to support the verdicts of assault on a public servant (point of error three) and attempting to take a weapon from a peace officer (point of error four).

In reviewing the legal sufficiency of the evidence, we review all of the evidence in the light most favorable to the verdict. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). The question presented is whether a rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *Clayton*, 235 S.W.3d at 778. We assume that the jury resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *Clayton*, 235 S.W.3d at 778.

In reviewing the factual sufficiency of the evidence, we consider all the evidence in a neutral light, while giving due deference to the jury's determination. *See Sims v. State*, 99 S.W.3d 600, 604 (Tex. Crim. App. 2003); *Vasquez v. State*, 67 S.W.3d 229, 236 (Tex. Crim. App. 2002). Evidence is factually insufficient when it is so weak that the verdict seems clearly wrong and manifestly unjust, or when the verdict is against the great weight and preponderance of the evidence. *Berry v. State*, 233 S.W.3d 847, 854 (Tex. Crim. App. 2007); *Watson v. State*, 204 S.W.3d 404, 414-

---

[3] When denying Chadwick's request to represent himself, the trial court also noted orally that "A lot of what the Defendant has talked about, about the whole state being prejudiced against him, is—is mostly irrelevant to this—this case . . . ."

15 (Tex. Crim. App. 2006). The jury is the sole judge of the credibility of the witnesses and the weight to be accorded their testimony. *Vasquez*, 67 S.W.3d at 236. We may not reweigh the evidence and substitute our judgment for that of the jury. *Watson*, 204 S.W.3d at 417; *King v. State*, 29 S.W.3d 556, 563 (Tex. Crim. App. 2000).

To prove the offense of assault of a public servant, the State must prove that: (1) Chadwick intentionally, knowingly, or recklessly caused bodily injury to Rychlik; (2) Rychlik was a public servant; (3) Chadwick knew Rychlik was a public servant; and (4) Rychlik was lawfully discharging his official duties at the time of the assault. *See* Tex. Penal Code Ann. § 22.01(b)(1); *see also Hall v. State*, 158 S.W.3d 470, 473 (Tex. Crim. App. 2005). Bodily injury is defined as "physical pain, illness, or any impairment of physical condition." *See* Tex. Penal Code Ann. § 1.07(a)(8) (West Supp. 2008). Chadwick argues that the State failed to prove he caused bodily injury to Rychlik because the evidence was not legally or factually sufficient to prove that he kicked Rychlik.

The jury heard testimony that Rychlik felt Chadwick kick him on the leg several times and that this caused him physical pain. Rychlik testified that the pain caused him to limp for the rest of the day and most of the next. Rychlik further testified that he found an abrasion on his left leg the next day and the jury saw pictures of this injury. Chadwick contends that, because Bailiff Race did not see Chadwick kick Rychlik, a reasonable jury could not have found that Chadwick caused bodily injury to Rychlik. Chadwick argues that the only reasonable interpretation of the evidence is that Rychlik's leg was injured when Race pulled on Rychlik's leg when trying to separate Rychlik and Chadwick. However, Race did not testify that Chadwick did not kick Rychlik; he testified only that he did not see Chadwick kick Rychlik. Race further testified that he did not see what happened

9

between the time he heard the arguing from the hallway and the time he entered the room to see Rychlik up against the railing. According to Rychlik, Chadwick kicked him in that intervening period before Race entered the courtroom. At trial, Chadwick attempted to show that Race had in fact seen the entire altercation and that, therefore, if Race had not seen Chadwick kick Rychlik, then it did not happen. Defense counsel cross-examined Race using his prior report of the incident, in which Race wrote that "Jerry went to get Chadwick's arm to escort him out of the courtroom. Chadwick walked right into Jerry." On redirect, Race responded that he did not actually see this happen, and testified, "I just assumed because that's the way I would have done it."

Chadwick argues that, as the victim, Rychlik is biased and therefore his version of the story cannot be believed. Therefore, Chadwick reasons, the jury should have credited Race's testimony as reflected in his written report. The jury, however, is the sole judge of the credibility of a witness and may believe or disbelieve any part of a witness's testimony. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); *Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991). The jury was presented with Rychlik's version of the events and Race's version of events. To the extent these conflicted, it was the jury's job to resolve those conflicts. *See Vasquez*, 67 S.W.3d at 237.

A reasonable jury could have credited Chadwick's version of the events, as well as Race's testimony that he did not actually see all of the altercation. Viewing the evidence in the light most favorable to the verdict, we conclude that the jury could have reasonably determined that the State proved beyond a reasonable doubt that Chadwick kicked Rychlik before Race entered the room. Viewing the evidence in a neutral light, we conclude that the evidence that Chadwick kicked

10

Rychlik is not so weak as to make the verdict seem clearly wrong and manifestly unjust, and that the verdict is not against the great weight and preponderance of the evidence. Therefore, we hold that the evidence was both legally and factually sufficient to support the verdict of guilty of assaulting a public servant. Chadwick's third point of order is overruled.

To prove the offense of attempting to take a weapon from a peace officer, the State must prove that Chadwick (1) intentionally or knowingly and (2) with force (3) attempted to take a firearm, nightstick, stun gun, or personal protection chemical dispensing device from Rychlik, (4) a peace officer, (5) with the intention of harming Rychlik or a third person. *See* Tex. Penal Code Ann. § 38.14(b). Chadwick argues that the State did not prove that he "attempted" to take Rychlik's firearm from him because the State failed to prove any acts by Chadwick that constituted more than mere preparation.

Rychlick testified that he felt pressure on his gun and that while Chadwick was "pulling up" on his gun, he was "pushing as hard as [he] could" to prevent Chadwick from taking the gun. Rychlick also testified that the strap on his holster was snapped shut before the struggle with Chadwick, but he noticed after the altercation that it was unsnapped, though he did not know how or when during the altercation the strap became unsnapped. Race could not confirm whether Chadwick was pulling up on Rychlik's weapon, because he could not see Chadwick's hands. Race did, however, testify that, based on Chadwick's positioning, he was "concerned that [Rychlik's] gun [would] be taken away from him."

Chadwick contends that this evidence is not enough to allow a rational trier of fact to find that Chadwick attempted to take Rychlik's gun because the gun was never taken from the holster. However, the State was not required to prove that Chadwick actually took and gained

11

control of Rychlik's gun—only that he attempted to do so. Even if the jury did not believe that Chadwick had unsnapped the holster, the testimony that Chadwick was pulling up on the weapon was enough to establish attempt. *See Hackbarth v. State*, 617 S.W.2d 944, 946 (Tex. Crim. App. 1981) (attempt does not require proof that every act short of actual commission was accomplished). We hold that pulling on the gun, an act that would tend to dislodge the weapon and thus allow Chadwick to take possession and control of it, constitutes attempt to take the weapon.

Chadwick also argues that Rychlik's testimony that Chadwick was pulling up on the gun while Rychlik was pushing down conflicts with Race's testimony that Rychlik was using his hands to keep from falling over the railing. This contention misconstrues Race's testimony. Race testified that he could not see Rychlik's hands, but that he "suppos[ed] they were behind him trying to keep from going over the bar." Furthermore, it is for the factfinder—the jury in this case—to resolve any conflicts in evidence. *See Vasquez*, 67 S.W.3d at 237. The jury heard both Rychlik's and Race's version of events and was free to believe or disbelieve any portion of their testimony. *See Johnson*, 23 S.W.3d at 7; *Saxton*, 804 S.W.2d at 914.

A rational jury could have credited Rychlik's testimony that Chadwick was pulling up on Rychlik's gun, and thus concluded beyond a reasonable doubt that Chadwick attempted to take Rychlik's weapon from him. Therefore, we hold that the evidence was legally sufficient to support the verdict. The evidence that Chadwick attempted to take the gun from Rychlik is not so weak as to render the guilty verdict manifestly unjust or against the great weight and preponderance of the evidence. Therefore, the evidence was factually sufficient to support the verdict. We overrule Chadwick's fourth point of error.

12

**CONCLUSION**

Because we determine that the trial court did not err in denying Chadwick's motion to proceed pro se and that the evidence was legally and factually sufficient to support the verdicts, we overrule all points of error and affirm the judgments of conviction.

_____

Diane M. Henson

Before Justices Patterson, Waldrop and Henson

Affirmed

Filed:   January 23, 2009

Publish

13