

**NUMBER 13-10-406-CR**

**COURT OF APPEALS**

**THIRTEENTH DISTRICT OF TEXAS**

**CORPUS CHRISTI - EDINBURG**

---

**GUILLERMO RODRIGUEZ aka WILLIE RODRIGUEZ,**     **Appellant,**

**v.**

**THE STATE OF TEXAS,**     **Appellee.**

---

**On appeal from the 40th District Court
of Ellis County, Texas.**

---

# MEMORANDUM OPINION

**Before Justices Garza, Benavides, and Vela
Memorandum Opinion by Justice Vela**

A jury convicted appellant, Guillermo Rodriguez aka Willie Rodriguez, of assault on a public servant, a third-degree felony. *See* TEX. PENAL CODE ANN. § 22.01(a)(1), (b)(1) (Vernon Supp. 2010). After finding that appellant had two prior felony convictions, the jury assessed punishment at thirty years' imprisonment. By two issues, appellant

challenges the legal and factual sufficiency of the evidence to support his conviction. We affirm.

## I. FACTUAL BACKGROUND

In the early morning of July 9, 2009, Debra Murray, an Ellis County Sheriff's Department dispatcher, received a 9-1-1 call from Kandice Lemley, who said she was at "the domes in Italy [Texas]" and that "Willie" was "yanking on her and throwing beer bottles at her and chasing her." Murray dispatched several law enforcement officers to the scene, including Officer Chris Bentley and his partner, Officer Mike Adams.

Officer Bentley, a police officer with the City of Italy Police Department, testified that when he and Officer Adams arrived at the scene, they talked to Lemley, who told them appellant had "gone into his dome," which Officer Bentley described as an efficiency apartment. After Officer Adams pounded several times on appellant's front door, appellant came out and told Officers Bentley and Adams that he had thrown beer bottles at Lemley. Officer Adams tried to arrest appellant, but he "pushed away from" Officer Adams and tried to go back into his dome. Appellant, who appeared intoxicated, struggled with the officers, and they had to pepper spray him in order to handcuff his hands behind his back. At that time, Officer Chin parked his police car outside appellant's dome. As Officers Bentley and Adams escorted appellant to Officer Chin's car, appellant told them he was not going to jail and kicked the door of Officer Chin's car, putting a dent in the door. Officer Bentley testified appellant's act of kicking the door "knocked us off balance and we all fell." He stated that when they fell, "my left elbow being in his [appellant's] back, it hit the concrete. We all fell on it." When the prosecutor

2

asked him, "[W]hen your elbow hit the ground, did it cause you pain?", he replied, "Yes, sir," and said that "[i]t was a lot of pain . . . not only was it hurt, everyone was laying on it and I couldn't get it out. It was pinned down." After Officers Chin and Adams put appellant into the police car, appellant "started beating his head against the window."

While Officer Bentley was still at the scene, paramedics gave him an ice pack to put on his elbow. At the hospital, Officer Bentley learned that there "could be" a small cracked bone in his elbow.

Officer Bentley testified that at the time he injured his elbow, he was wearing "a distinctive uniform of the Italy Police Department." He stated that the uniform was a "Class B uniform," meaning "[i]t is a little more flexible. It has cargo pockets on the pants. It has police across the back. It has a sewn on badge opposed to it being pinned on." He stated the badge is "clearly visible" and that he had "[p]atches on both arms. . . ." He also testified he was driving "a marked police vehicle. It has police on both sides of it. It has a light bar on it" that was "activated." He explained that Officer Chin's police car was a "marked vehicle" that had "an in-window lighting system that is not out on the outside. It's marked police in red on the side."

On cross-examination, Officer Bentley testified that "[a]s he [appellant] was falling from kicking the door, it forced me to the ground." He stated that "[w]hen he [appellant] fell, my arm was inside his arm, and when he fell, it pulled me to the ground."

On re-direct-examination, when the prosecutor asked Officer Bentley, "Why did you-all fall?", he said, "Because he kicked the door so hard that it knocked him off balance and it knocked us off balance." After this response, the prosecutor asked, "And pushed

3

you?" He said, "And pushed us to the ground." When the prosecutor asked him, "You fell because he kicked the door, pushed in to both you and Officer Adams and down everybody went?", he said, "Yes, sir." Next, the prosecutor asked him, "And as he went down, he pulled you down as well?" To this, he said, "Yes, sir."

Appellant testified that on the evening in question, Lemley came to his residence and drank two beers. At that time, she asked him for money so she could pay her rent. When he told her he did not have any money to give her, she left. He testified he "had a few beers after she left, but I wasn't intoxicated." He stated he did not throw beer bottles at Lemley, and he said he did not tell Officer Bentley that he had thrown beer bottles at her.

Appellant testified that when he opened his front door, "they rushed in and grabbed me and started trying to pull me out." He said that "they pushed me to the car and all this time they tried to rush my head into the . . . cop car." He said that after they put him in handcuffs, "and . . . after they tried to run my head into the . . . cop car, I put my foot to stop them from running my head. . . ." He explained that "[I] put my foot up so I wouldn't . . . hit my head. And then . . . that's when they . . . threw me to the ground. And we all three fell, but he did not fall up under me because I fell up under my wrist, on my arm. . . ." When defense counsel asked appellant, "What, in fact, to your knowledge, what made the dent in the car?", he said, "[P]robably when I put my . . . foot up there to stop them from . . . . running my head into it." However, he also stated, "It wasn't . . . dented when I . . . left, when they put me in there. I couldn't have done that big old dent." When defense counsel asked him if he "intentionally, knowingly, or recklessly cause[d] bodily injury to

4

[Officer] Bentley?", he said, "No, sir."  When asked if he had "push[ed] or pull[ed]" Officer Bentley to the ground, he said, "No, sir."

On cross-examination, appellant testified he did not know that Officer Bentley was a police officer, and he did not know when Officer Bentley received his injury.  He testified he was not handcuffed when the officers took him to the police car and that "[t]hey were running [him] head first into the car[.]"  When he put his foot up to stop them, "[e]verybody went to the ground[.]"  Afterwards, the officers handcuffed him and then pepper sprayed him.

## II. DISCUSSION

In issue one, appellant argues the evidence is legally insufficient to support his conviction for assault on a public servant.  In issue two, he argues the evidence is factually insufficient to support his conviction for assault on a public servant.  We review his sufficiency complaints under only the standard set out in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  *See Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (overruling *Clewis v. State*, 922 S.W.2d 126 (Tex. Crim. App. 1996)).

## A. Standard of Review

"When conducting a legal sufficiency review, a court must ask whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt'—not whether '*it* believes that the evidence at trial established guilt beyond a reasonable doubt.'"  *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009) (quoting *Jackson*, 443 U.S. at 318-19) (emphasis in original).  "In doing so, we assess all of the evidence 'in the light most favorable to the prosecution.'"  *Id.* (quoting

*Jackson*, 443 U.S. at 319).   "After giving proper deference to the fact finder's role, we will uphold the verdict unless a rational fact finder must have had reasonable doubt as to any essential element."   *Id.* at 518.   We must presume that the fact finder resolved any conflicting inferences in favor of the prosecution and defer to that resolution.   *Jackson*, 443 U.S. at 326.

**1. Applicable Law**

Our review of a legal sufficiency challenge should be examined under the principles of review for a hypothetically correct jury charge.   *Grotti v. State*, 273 S.W.3d 273, 280-81 (Tex. Crim. App. 2008).   "'Such a charge [is] one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof, or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'"   *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009) (quoting *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)).

To prove the offense of assault on a public servant, the State must prove that:   (1) appellant intentionally, knowingly, or recklessly caused bodily injury to Officer Bentley; (2) Officer Bentley was a public servant; (3) appellant knew Officer Bentley was a public servant; and (4) Officer Bentley was lawfully discharging his official duties at the time of the assault.   *See* TEX. PENAL CODE ANN. § 22.01(b)(1); *Chadwick v. State*, 277 S.W.3d 99, 105 (Tex. App.–Austin 2009)*, aff'd on other grounds*, 309 S.W.3d 558 (Tex. Crim. App. 2010); *see also Hall v. State*, 158 S.W.3d 470, 473 (Tex. Crim. App. 2003).   Bodily injury is defined as "physical pain, illness, or any impairment of physical condition."   *Id.* §

1.07(a)(8) (Vernon Supp. 2010). In this case, the charge stated, in relevant part, that the jury could convict appellant of assault on a public servant if it found "from the evidence beyond a reasonable doubt that on or about July 9, 2009, . . . [appellant] did intentionally or knowingly or recklessly cause bodily injury to Chris Bentley by pushing or pulling him to the ground, and the defendant did then and there know that the said Chris Bentley was then and there a public servant, to-wit: a peace officer, and that the said Chris Bentley was then and there lawfully discharging an official duty, to-wit: arresting the said [appellant]. . . ."

### 2. Analysis

In this case, a rational jury could have determined the following from the evidence: (1) Officer Bentley testified that appellant "pulled me to the ground" and "pushed us to the ground" when appellant kicked the door of the police car; (2) when appellant pulled Officer Bentley to the ground, he caused physical pain to Officer Bentley; (3) at the time of the assault, Officer Bentley was on duty as a City of Italy police officer, who was engaged in the lawful discharge of an official duty of arresting appellant; (4) that at the time of the assault, Officer Bentley was in uniform and wearing a badge; and (5) appellant was aware Officer Bentley was a police officer. To the extent that Officer Bentley's testimony conflicted with appellant's testimony, it was within the jury's province to resolve the conflicts. *See Vasquez v. State*, 67 S.W.3d 229, 237 (Tex. Crim. App. 2002).

After viewing the evidence in the light most favorable to the verdict, we hold the evidence is legally sufficient to support the conviction for assault on a public servant beyond a reasonable doubt. Issues one and two are overruled.

### III. CONCLUSION

We affirm the trial court's judgment.


ROSE VELA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the 3rd
day of February, 2011.

8