ACCEPTED
03-14-00371-CR
4908209
THIRD COURT OF APPEALS
AUSTIN, TEXAS
4/15/2015 11:41:03 PM
JEFFREY D. KYLE
CLERK

# IN THE COURT OF APPEALS
# THIRD DISTRICT OF TEXAS
# AUSTIN, TEXAS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS

4/15/2015 11:41:03 PM

JEFFREY D. KYLE
Clerk

_____

# NO. 03-14-00371-CR

_____

**JIM JACK THOMPSON, Appellant**

**v.**

**THE STATE OF TEXAS, Appellee**

_____

**ON APPEAL FROM THE 26TH JUDICIAL DISTRICT COURT
OF WILLIAMSON COUNTY, TEXAS
CAUSE NUMBER 13-0520-K26**

_____

# BRIEF FOR APPELLANT

_____

# ORAL ARGUMENT IS REQUESTED

**RAY BASS, ATTORNEY**
**SBN 01884000**

**120 W. 8th Street**
**Georgetown, Texas 78626**
**Tel: 512-863-8788**
**Fax: 512-869-5090**
**Email:ray@raybass.com**

**ATTORNEY FOR APPELLANT**

# IDENTITY OF PARTIES AND COUNSEL

**PARTIES TO THE TRIAL COURT'S JUDGMENT:**

>   JIM JACK THOMPSON, III, Defendant
>   THE STATE OF TEXAS

**TRIAL COUNSEL:**

>   MS. LAUREN McLEOD SBN 24029584
>   MS. LYTZA ROJAS SBN 24046750
>   ASSISTANT DISTRICT ATTORNEYS
>   405 MARTIN LUTHER KING STREET
>   GEORGETOWN, TEXAS 78626
>   TEL. 512-943-1234
>   FAX: 512-943-1255
>   ATTORNEYS FOR THE STATE OF TEXAS
>
>   MR. WILLIAM HINES, III SBN 0969930
>   MR. R MARC RANC SBN 01786187
>   HINES, RANC,, & HOLUB, LLP
>   1112 ROCK STREET
>   GEORGETOWN, TEXAS 78626
>   TEL. 512-930-7500
>   FAX: 512-930-7537
>   ATTORNEYS FOR DEFENDANT

**APPELLATE COUNSEL:**

>   MR. RAY BASS, Attorney
>   SBN 01884000
>   120 W. 8TH STREET
>   GEORGETOWN, TEXAS 78626
>   TEL. 512-863-8788
>   FAX: 512-869-5090
>   ATTORNEY FOR DEFENDANT
>
>   MR. JOHN C. PREZAS, ASSISTANT DA
>   SBN 24041722
>   405 MARTIN LUTHER KING STREET
>   GEORGETOWN, TEXAS 78626
>   TEL. 512-943-1248
>   FAX: 512-943-1255
>   ATTORNEY FOR THE STATE OF TEXAS

# TABLE OF CONTENTS

|  | Page |
|---|---|
| INDEX OF AUTHORITIES | i |
| STATEMENT OF THE CASE | 1 |
| STATEMENT OF FACTS | 1 |
| POINT OF ERROR | 13 |

THE EVIDENCE IS LEGALLY INSUFFICIENT TO SUPPORT APPELLANT'S CONVICTION FOR BURGLARY OF A HABITATION (ROBBERY) AS ALLEGED IN PARAGRAPH TWO OF THE INDICTMENT.

| CONCLUSION AND PRAYER | 23 |
|---|---|
| CERTIFICATE OF COMPLIANCE | 24 |
| CERTIFICATE OF SERVICE | 25 |

# INDEX OF AUTHORITIES

PAGE

*Case Law*

Byars v. State, # 14-07-00824                           23
(Tex. App. – Houston [14th Dist.] 2008)
(not designated for publication)

Chadwick v. State, 277 S.W.3d 99                        13
(Tex. App. - Austin 2009)

Cooper v. State, 373 S.W.3d 821                         19
(Tex. App.-Austin 2012)

Davis v. State, 757 S.W.2d 386                          22
(Tex. App. – Dallas 1988)

DeVaughn v. State, 749 S.W.2d 62                        14
(Tex. Crim. App. 1988)

Garfias v. State, 424 S.W.3d 54                         19
(Tex. Crim. App. 2014)

Gumpert v. State, 49 S.W. 3d 450                        23
(Tex. App. –Texarkana 2001)

Hooper v. State, 214 S.W.3d 9                           13
(Tex. Crim. App. 2007)

In Re The Matter Of E.U.M. 108 S.W..3d 368             22
(Tex. App. – Beaumont 2003)

Jackson v. Virginia, 443 U.S. 307(1979)               13

Martinez v. State, 269 S.W.3d 777                      14
(Tex. App.-Austin 2008)

Mendez v. State, 575 S.W.2d 550                         21
(Tex. Crim. App. 1979)

McCrary v. State, 327 S.W.3d 165                        19
(Tex.App.-Texarkana 2010).

Williams v. State, 235 S.W.. 3d 742                     21
(Tex. Crim. App. 2007)

Yates v. State, 624 S.W.2d 816                                          22
(Tex. Ap. – Houston [14th Dist.] 1981, no pet)


*Statutes*

Tex. Penal Code Ann. § 1.07(8)                                         19

Tex. Penal Code Ann. § 6.03(c)                                         21

Tex. Penal Code Ann. § 6.03(d)                                         21

Tex. Penal Code Ann. § 29.01(1)                                        17

Tex. Penal Code Ann. § 29.02(a)(1)                                     14

Tex. Penal Code Ann. § 30.02(a)(3)                                     14

Tex. Penal Code Ann. § 31.01(2)(A)                                     18

Tex. Penal Code Ann. § 31.01(4)(B)                                     18

Tex. Penal Code Ann. § 31.03(a)                                        17

Tex. Penal Code Ann. § 31.03(b)                                        18

## STATEMENT OF THE CASE

Appellant was convicted by a jury of burglary of a habitation, a felony of the first degree. The jury subsequently found that appellant had previously been convicted of the felony offense of burglary of a habitation and assessed his punishment at 60 years confinement. By this appeal appellant presents one point of error contending that the evidence is insufficient to support appellant's conviction for burglary of a habitation (Robbery) as alleged in paragraph two of the indictment.

## STATEMENT OF FACTS

*The Indictment*

The one count indictment alleged, in paragraph II, that on or about March 15, 2013, the defendant, "without the effective consent of Shannon Francis, the owner, intentionally or knowingly entered a habitation and committed or attempted to commit the felony offense of robbery[1]".

---

[1] Paragraph I of the indictment alleged that appellant, "without the effective consent of Shannon Francis, the owner, entered a habitation with intent to commit the offense of robbery". After both sides rested the state waived paragraph I (RR, Vol. 11, p. 119).

*The State's Case*

On March 15, 2013, Melinda Cortez, assistant manager at the Payless Shoe Store on Palm Valley street in Round Rock, noticed appellant walk into the store *(RR. Vol. 9, p. 38)*. He was wearing a black T-Shirt with the word "Staff" written on the back *(RR. Vol. 9, p. 53)*. Cortez was waiting on a customer at the cash register when, shortly after appellant entered the store, she heard the uniquely distinct shutting sound of the door that opens to the office store room and employees area at the back of the store *(RR. Vol. 9, p. 54)*. She excused herself and walked to the middle aisle of the store from which she could see the door leading to the office area *(RR. Vol. 9, p. 55)*. She saw appellant walking up the aisle and asked if he had just left the back room *(RR. Vol. 9, p. 55)*. He first said "no" but ultimately admitted he had walked back into that area to look for a bathroom *(RR. Vol. 9, p. 56)*. Cortez walked to the back of the store, opened the door, and saw her purse and the contents thereof scattered on the floor *(RR. Vol. 9, p. 56)*. She ran back to the front cash register and asked the customer waiting there if she knew where appellant had gone *(RR. Vol. 9, p.*

*57). The customer said that appellant had just jumped into a truck parked right in front of the store (RR. Vol. 9, p. 56). Cortez ran outside where she saw appellant in the passenger seat of the truck and an elderly woman at the wheel starting to back out of the handicap parking slot (RR. Vol. 9, p. 58). Cortez hollered "don't give him a ride, he just robbed us" (RR. Vol. 9, p. 58). Appellant then jumped out of the cab of the truck, jumped into the truck bed and sat down with his back to the cab (RR. Vol. 9, p. 59). He then jumped out of the bed of the truck and started running down the sidewalk past Cortez (RR. Vol. 9, p. 60). As appellant ran by, Cortez told him that she is "on the phone giving the police a description" (RR. Vol. 9, p. 61). Cortez watched as appellant ran into a nearby subdivision (RR. Vol. 9, p. 62). She later determined that her wallet had been taken from her purse (RR. Vol. 9, p. 56).*

*On March 15, 2013, Shannon Francis left her job as an Assistant Williamson County Attorney to have lunch at her home at 1475 Rainbow Parke, in Round Rock (RR. Vol. 9, pp, 106, 108). Holding her Louie Vitton purse on the "crook" of her left arm she entered her home through the garage and immediately noticed appellant, who was wearing shorts but no*

3

shirt, sleeping face up on the floor of her bedroom *(RR. Vol. 9, pp. 111, 117, 118, 147)*. When Francis first walked into the bedroom appellant did not respond to her *(RR. Vol. 9, p. 118)*, but when she said "Hello" and "Who are you" appellant turned his face towards her and started mumbling the names of some people who said he could "crash" in the house during South By Southwest *(RR. Vol. 9, p. 119)*. Francis noticed that one of her other purses was lying on the bed and that the contents of that purse had been "dumped out" *(RR. Vol. 9, p. 119)*. At this point she realized that she was confined inside her home with a "criminal" *(RR. Vol. 9, p. 120)*. She started stepping backwards toward the garage, hit the button to open the garage door, and began reaching for her cell phone *(RR. Vol. 9, p. 120)*. Appellant, who was now following Francis, asked if he could borrow her phone *(RR. Vol. 9, p.151)*. She said "no" and called 911 *(RR. Vol. 9, p. 122)*, telling the man who answered that she needed the police *(RR. Vol. 9, p. 123)*. Appellant entered the garage and asked Francis for her keys. When she refused appellant grabbed her left arm[2] and attempted to take her purse *(RR. Vol. 9, p. 123)*. In a brief struggle, Francis and her purse quickly ended up on the garage floor *(RR. Vol. 9,*

---

[2] Francis testified that where appellant grabbed her left arm she "felt it for several days". *(RR, Vol. 9, p. 125)*.

4

*p. 123)*, causing "some very minor scraping" to her knee "that became bruises later" *(RR. Vol. 9, p. 140)*. When asked how she ended up on the floor, Francis responded "just through the force of the struggle" *(RR. Vol. 9, p. 123)*. Appellant got the purse and dumped the contents onto the floor of the garage. He found the car keys, ran into the driveway, and entered Francis' vehicle *(RR. Vol. 9, p. 126)*, but ran back into the garage screaming at Francis to start the car and to give him the keys *(RR. Vol. 9, p. 127)*. Francis hollered "You have the keys", but appellant got down on the ground and started going through her purse again *(RR. Vol. 9, p. 128)*. He found her house key and ran back to the car, apparently trying to start it but he could not *(RR. Vol. 9, p. 128)*. He ran back to the garage again screaming at Francis to start the car or give him the keys *(RR. Vol. 9, p. 129)*. Francis, frightened by appellant's escalating behavior, told him to push the button on the key housing to pop the key out *(RR. Vol. 9, p. 129)*. Appellant ran back to the car and Francis ran into the drive way screaming "help me" *(RR. Vol. 9, p. 130)*.

Just as Francis ran into the driveway, Round Rock Police Officer Jerry Hallford was slowly driving his patrol car towards Francis' house *(RR.*

*Vol. 9, p. 166).* He was patrolling the area in search of the suspect in the recent theft at the nearby Payless Shoe Store *(RR. Vol. 9, p. 163).* He saw Francis in her driveway using both hands frantically trying to waive him down *(RR. Vol. 9, p. 170).* He stopped in front of the house, stepped out of his vehicle, and started walking toward the driveway *(RR. Vol. 9, p. 171).* He asked Francis: "does he belong here", and when she said "no", appellant started walking away. *(RR. Vol. 9, p. 173-174).* Hallford commanded appellant to stop but he started running down the street. As the officer gave chase on foot, appellant crossed the street and ran between two houses into a fenced back yard *(RR. Vol. 9, pp. 174-176).* When Hallford approached appellant turned toward him and was taser dropped to the ground *(RR. Vol. 9, pp. 177-179).* Appellant attempted to pull the taser prongs out of his body and was tasered a second time *(RR. Vol. 9, p. 180),* but he removed the taser prongs and took off running again, charging through a fence gate *(RR. Vol. 9, p. 181)* and breaking through fences in two additional backyards *(RR. Vol. 9, p. 182).* Unable to knock down the fence in a third backyard appellant again turned toward officer Hallford who unsuccessfully attempted to tase him a third time *(RR. Vol. 9, p. 182).* Appellant jumped the

fence and started running toward Red Bud street. Hallford jumped the fence and continued to pursue appellant into a Wal Mart parking lot *(RR. Vol. 9, p. 183)*. Appellant jumped into the passenger side of a van in the parking lot, and when the driver stepped out appellant drove off in the van at a high rate of speed almost hitting a patrol car that had just entered the parking lot *(RR. Vol. 9, p. 188-189)*. He jumped a median into a grassy area, hit a tree, jumped a curb and headed south on Red Bud street *(RR. Vol. 9, p. 190-193)*. Two police vehicles gave chase *(RR. Vol. 9, pp. 188 – 200)*.

Round Rock police officer Logan Harper-Hill had been dispatched to the theft at the Payless Shoe Store and was patrolling a nearby neighborhood looking for the suspect when he heard officer Hallford's call for help in apprehending someone in the Wal Mart parking lot *(RR. Vol. 9, p. 224)*. He activated his overhead lights and headed to Wal Mart *(RR. Vol. 9, p. 225)*. As he entered the parking lot he saw a maroon van that was headed towards him, but the van hit a tree then headed south on Red Bud Street *(RR. Vol. 9, p. 226)*. The officer followed as appellant ran through a red light, made a sharp left turn onto Woodlawn Street, drove across several yards, and drove into a ditch

*(RR. Vol. 9, p. 227).* **Appellant jumped out of the van and started running until he jumped a chain link fence and encountered two big dogs in the yard** *(RR. Vol. 9, p. 227-228)*, **at which point he was apprehended by officer Harper-Hill and handcuffed by officer Brandes** *(RR. Vol. 9, p. 229).* **After being apprehended appellant said he "made a mistake" and knew he was "going to pay for it"** *(RR. Vol. 9, p. 230).*

**On March 22, 2013, Round Rock Detective Bernie Villegas obtained from Shannon Francis a black T-Shirt she had found on the floor of her closet. Printed on the front of the T-Shirt were the words "Hard Rock" and on the back the word "Staff"** *(RR. Vol. 10, p. 56).*

**A latent fingerprint lifted by officer Kerie Cress from a locker in the Payless Shoe Store employee room on March 15, 2013** *(RR. Vol. 10, p. 33)*, **was identified by DPS latent print examiner, Meghan Blackburn, as being matched to a known fingerprint of appellant** *(RR. Vol. 10, p. 47).*

*The Defense*

**Jeremy Charske is the project manager and**

estimator for All American Electrical, a company owned by appellant's father *(RR. Vol.10, p.67)*. The business is located at the father's home on Evergreen Street, just off of Red Bud in Round Rock *(RR. Vol.10, pp. 68 & 78)*. At approximately 9:30 AM on March 15, 2013, Charske saw appellant, who at the time was living in the house on Evergreen *(RR. Vol.10, p.79)*, on the back porch of the house *(RR. Vol.10, p.70)*. Appellant was rapidly pacing back and forth like a "caged animal", rubbing his hands then rubbing his head *(RR. Vol.10, p.70)*. Sensing that something was obviously wrong, Charske opened the back door and asked appellant if everything was all right *(RR. Vol.10, p.71)*. Appellant did not answer but simply looked at Charske "with a blank stare" *(RR. Vol.10, p.71)*. Charske called appellant's father and told him that something was "seriously wrong" with appellant *(RR. Vol.10, p.71)*. By the time appellant's father arrived appellant was gone and no one knew where he had gone *(RR. Vol.10, p.72)*.

Sage Thompson is appellant's sister. On March 15, 2013, she was also living at her father's house on Evergreen *(RR. Vol.10, p.78)*. That morning she was supposed to take appellant to Bluebonnet, a mental health facility in Round Rock, to get his

9

anti-depressant medication *(RR. Vol.10, p.79)*. When asked why he takes the anti-depressants Sage said that when he is not taking the medication "he cries about everything" *(RR. Vol.10, p.80)*. At some point that morning appellant walked into the bathroom while Sage was brushing her teeth. She asked if he was ready to go and he said yes and walked out of the bathroom *(RR. Vol.10, p.80)*. Sage heard the front door open and when she came out of the bathroom appellant was gone and she never saw him again that day *(RR. Vol.10, p.81)*.

Robert Cantu is a medical doctor specializing in psychiatry. He is board certified in both general and forensic psychiatry *(RR. Vol.11, p. 45)*. He first evaluated appellant, at the request of appellant's family, in October 2012 *(RR. Vol.11, p. 46)*. Dr. Cantu determined that appellant had been on Effexor, an anti-depressant medication, for approximately six years but had run out of the medication and was doing badly *(RR. Vol.11, p. 46)*. After evaluating appellant Dr. Cantu continued him on the medication *(RR. Vol.11, p. 46)*. About a month later Cantu received a telephone call informing him that because of the expense appellant had decided to continue his treatment with MH-MR in Round Rock *(RR. Vol.11, p. 46)*.

In February 2014, appellant's family again contacted Dr. Cantu to do a psychiatric evaluation and assess his mental condition at the time of the alleged offense on March 15, 2013 *(RR. Vol.11, pp. 68 & 70)*. After reviewing appellant's medical and psychiatric records spanning a number of years, interviewing appellant and members of his family, and after reviewing the police reports of the March 15, 2013 incident, Dr. Cantu formed the opinion that appellant was suffering from a psychosis that was triggered by withdrawal from Effexor *(RR. Vol.11, pp. 50-52)*. Specifically, the withdrawal triggered "a kind of hypomanic or agitated state with a lot of disorganization" and "persecutory delusions that someone was out to get him; that people or an entity, evil, were trying to kill him" *(RR. Vol.11, p. 54)*. Dr. Cantu explained that appellant's odd behaviors on March 15, 2013, as described by witnesses, i.e: laying on the floor taking off his shirt, being unable to figure out how to start an automobile, jumping into the cab of a truck and then jumping into the bed of the truck and laying down as if he was then invisible, were consistent with the delusions and disorganization that accompany Effexor withdrawal *(RR. Vol.11, p. 59, 62)*. At the conclusion of the direct

examination of Dr. Cantu, the following exchange occurred *(RR. Vol.11, p. 62-63)*:

Q. (By defense counsel): And based on your review of all the materials, did it seem like it was his intent or purpose to get away but not to cause anyone particular harm?

A: I think getting away was it. I mean, it was all about getting away.

Q: Okay. You talk at the end of your report, about that the cognitive initial capacity as a result of mental illness was impaired. Can you explain a little bit more just about exactly what that meant?

A; It's a fancy way of saying he wasn't thinking right and, because he wasn't thinking right, he likely wasn't able to make decisions or conform behavior in a way that we would normally think, that anybody would normally think that he would normally think because of – because of that sort of – that thought disorganization.

Dr. Cantu also testified that in his opinion appellant did not intentionally, knowingly, or recklessly cause bodily injury to Shannon Francis *(RR. Vol.11, pp. 98 & 102)*.

## POINT OF ERROR

**THE EVIDENCE IS LEGALLY INSUFFICIENT TO SUPPORT APPELLANT'S CONVICTION FOR BURGLARY OF A HABITATION (ROBBERY) AS ALLEGED IN PARAGRAPH TWO OF THE INDICTMENT.**

## Argument & Authorities

The standard of review for determining whether evidence presented at a criminal trial is legally sufficient to prove the offense charged is whether, considering all of the evidence in the light most favorable to the finding of guilt, a rationale fact finder could have found that every element of the offense was proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307(1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007); *Chadwick v. State, 277 S.W.3d 99 (Tex. App. - Austin 2009)*.

*Elements: Burglary of a Habitation (Robbery)*

The offense of Burglary of a Habitation (Robbery) is committed when the actor intentionally or knowingly enters a habitation without the effective consent of the owner and commits or attempts to commit the offense of robbery. *See, Tex. Penal Code Ann. § 30.02(a)(3); DeVaughn v. State*, 749 S.W.2d 62 (Tex.Crim.App. 1988); *Martinez v. State*, 269 S.W.3d 777 (Tex.App.-Austin 2008).

A person commits robbery if, in the course of committing theft as defined in Chapter 31 of the penal code, and with intent to obtain or maintain control of the property, the person intentionally, knowingly, or recklessly causes bodily injury to another. *Tex.Penal Code Ann. § 29.02(a)(1).*

Thus, to find the evidence legally sufficient to support the appellant's conviction for Burglary of a Habitation (Robbery), this Court, after considering all of the evidence in the light most favorable to the verdict, must conclude that a rationale jury could have found beyond a reasonable doubt that appellant (1) intentionally or knowingly made a non-consensual entry into the home of Shannon Francis, and (2) thereafter while in the

14

course of committing theft (3) intentionally, knowingly, or recklessly caused bodily injury to Shannon Francis, (4) with intent to obtain or maintain control of the property.

*No Rationale Jury Could Have Found Beyond A Reasonable Doubt That Appellant Intentionally Or Knowingly Made a Non-Consensual Entry Into The Home Of Shannon Francis.*

The issue here is not whether appellant had permission to enter Shannon Francis' home. Clearly, she gave no such permission, and no rational person would believe that anyone else gave appellant permission to enter the home. The issue is whether, considering all the evidence in thie case, including the uncontradicted testimony of Dr. Robert Cantu, a rational jury could have found, beyond a reasonable doubt, that appellant knew he did not have permission to enter the home.

Dr. Robert Cantu, a board certified psychiatrist, had treated appellant in the past and was intimately familiar with appellant's medical and psychiatric history. He testified that appellant had been on Effexor, an anti-depressant medication, for at least 6 years. After reviewing the police reports, appellant's extensive medical

and psychiatric history, and after interviewing appellant and members of his family, Dr Cantu opined that on March 15, 2013, appellant was suffering from a psychosis triggered by withdrawal from Effexor. According to Dr. Cantu, appellant's odd behaviors, as characterized by witnesses to the incidents of March 15, and as outline in the statement of facts above, were consistent with the delusions and disorganization that accompany Effexor withdrawal. The state presented no expert testimony to contradict Dr. Cantu's characterization of appellant's mental condition on March 15, 2013.

Appellant told Francis that someone had allowed him to "crash" in the house during South By Southwest. Although no rational person would believe that anyone gave appellant permission to enter in the house, it is not unreasonable to believe that appellant who, according to the uncontradicted testimony of Dr. Cantu, was suffering a psychosis characterized by delusions and disorganization, believed he had permission to enter the home. No one testified about the circumstances surrounding appellant's entry into Ms. Francis' home. And, it is important that there was no testimony or evidence of a forced entry by

appellant, which would tend to suggest that he would have known he did not have permission to enter the house. Appellant was laying on the floor of Ms. Francis' bedroom, asleep, when she first saw him, and, he did not act as she would have expected a guilty person to act *(RR, Vol. 9, p. 149)*.

In light of all the facts and circumstances shown by the evidence in this case, no rationale jury could have found beyond a reasonable doubt that appellant knew he did not have permission to enter the habitation owned by Shannon Francis.

*No Rational Jury Could Have Found Beyond A Reasonable Doubt That Shannon Francis Was Injured While Appellant Was In The Course Of Committing Theft.*

"In the course of committing theft" means conduct that occurs in an attempt to commit theft, or during the commission of a theft, or in immediate flight after the commission of or attempt to commit theft. *Tex.Penal Code Ann. § 29.01(1).*

The offense of theft is committed when a person unlawfully appropriates property with intent to deprive the owner of the property. *Tex. Penal Code Ann. § 31.03(a).* "Appropriate" means to

17

acquire or otherwise exercise control over property other than real property. *Tex. Penal Code Ann. § 31.01(4)(B).* Appropriation of property is unlawful if it is without the owner's effective consent. *Tex.Penal Code Ann. § 31.03(b).* "Deprive" means to withhold property from the owner permanently or for so extended a period of time that a major portion of the value or enjoyment of the property is lost to the owner. *Tex.Penal Code Ann. § 31.01(2)(A).*

Bodily injury to Shannon Francis occurred while appellant was apparently attempting to exercise non consensual control over her purse. But no theft occurred unless it was appellant's intent to withhold the purse from Francis permanently or for long enough to significantly destroy the value or Francis' enjoyment of the property. The evidence simply will not justify a finding of such an intent beyond a reasonable doubt. Indeed, appellant left the purse on the garage floor next to Francis.

*No Rational Jury Could Have Found Beyond A Reasonable Doubt That Appellant Intentionally, Knowingly, or Recklessly Caused Bodily Injury to Shannon Francis*

"Bodily injury" means physical pain, illness, or any impairment of physical condition. *Tex. Penal*

*Code Ann. § 1.07(8).* Bodily injury robbery is a result oriented offense. *Garfias v. State*, 424 S.W.3d 54 (Tex. Crim. App. 2014); *Cooper v. State*, 373 S.W.3d 821 (Tex. App.-Austin 2012); *McCrary v. State*, 327 S.W.3d 165 (Tex.App.-Texarkana 2010). The culpable mental state focuses on the result of, and not the nature of the defendant's conduct. Thus, to find that appellant intentionally, knowingly, or recklessly caused bodily injury to Shannon Francis, the jury had to find beyond a reasonable doubt that it was his conscious objective or desire to cause physical pain to Francis, or that he knew his conduct was reasonably certain to cause physical pain to Shannon Francis, or that he was aware of but consciously disregarded a substantial and unjustifiable risk that his conduct would cause physical pain to Shannon Francis.

Bodily injury to Shannon Francis occurred while appellant was attempting to exercise control over her purse. After appellant grabbed her left arm and attempted to grab the purse, a brief struggle ensued and Francis ended up on the garage floor with "some very minor scraping" to her knee. She testified that she also had some pain to her left arm. There is no evidence that it was

appellant's conscious objective or desire to cause physical pain to Francis, or that he knew his spontaneous action was reasonably certain to cause her physical pain. Appellant made no verbal threats and no admissions of having such a culpable mental state. Merely grabbing Francis' arm and reaching for her purse is not conduct that is likely to cause bodily injury. Although a struggle ensued, Francis offered no testimony or demonstration of the details of the struggle, which almost instantly resulted in Francis and her purse being on the garage floor.

The issue is whether or not the evidence supports a finding that appellant *recklessly* caused physical pain to Francis. In this regard it is important to understand the difference between criminal recklessness and criminal negligence.

A person acts recklessly, or is reckless with respect to the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from

20

the actor's standpoint. *Tex. Penal Code Ann. §  6.03(c).* A person acts with criminal negligence, or is criminally negligent, with respect to the result of his conduct when he *ought* to be aware of a substantial and unjustifiable risk that the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint *Tex. Penal Code Ann. § 6.03(d).*

Unlike criminal negligence, criminal recklessness requires the defendant to actually foresee the risk involved and to consciously decide to ignore it. Mere lack of foresight, irresponsibility, thoughtlessness, stupidity, or ordinary carelessness, however serious the consequences may happen to be, does not rise to the level of criminal recklessness. *Williams v. State*, 235 S.W.. 3d 742 (Tex. Crim. App. 2007).

Cases involving the discharge of a firearm provide, perhaps, the best example of what is required to prove a criminally reckless state of mind. *See, Mendez v. State*, 575 S.W.2d 550 (Tex. Crim. App. 1979)(*shooting randomly at houses in one*

21

*of which an occupant was killed*); *Yates v. State*, 624 S.W.2d 816 (Tex. Ap. – Houston [14[th] Dist.] 1981, no pet) (*pointing a loaded gun at another who was killed when the gun accidentally discharged*); *In Re The Matter Of E.U.M.* 108 S.W..3d 368 (Tex. App. – Beaumont 2003)(*E.U.M. a juvenile, for amusement only and without intent to kill, pointed a sawed off shotgun at her friend and, forgetting that it was loaded, pulled the trigger, shooting and killing her friend*); *Davis v. State*, 757 S.W.2d 386 (Tex. App. – Dallas 1988)(*defendant picked up a pistol that he kept in his truck, and while he and his girlfriend were sitting in the truck he started playing with the pistol by spinning it on his index finger. The pistol discharged and killed his girlfriend*). In these kinds of cases "It defies reason to question that any person would not be cognizant of a substantial and unjustifiable risk of harm in such a situation." *In Re The Matter Of E.U.M., supra* at 371.

Because Shannon Francis received minor injuries as a result of a very brief "struggle" precipitated by appellant's attempt to take her purse, It might be argued that this case is analogous to cases where injuries to a police officer resulted from a struggle with a person

22

resisting arrest. See, *Byars v. State*, # 14-07-00824 (Tex. App. – Houston [14th Dist.] 2008)(not designated for publication); *Gumpert v. State*, 49 S.W. 3d 450 (Tex. App. –Texarkana 2001). But, in those cases the defendants' conduct amounted to more than precipitating the struggle. During the course of the struggle the defendant, while resisting police efforts to detain or arrest him, started intentionally "flailing his arms" around, or kicking, in a manner that unquestionably created a substantial and unjustifiable risk of causing bodily injury, and in circumstances that any person would be cognizant of such a risk.

Although the evidence is sufficient to prove that appellant negligently caused bodily injury to Shannon Francis, it is legally insufficient to prove that he intentionally, knowingly, or recklessly caused bodily injury to Shannon Francis.

## CONCLUSION AND PRAYER

Because the evidence is legally insufficient to prove that appellant intentionally or knowingly entered a habitation owned by Shannon Francis and committed or attempted to commit the felony offense

23

of robbery, appellant prays that his conviction for that offense be set aside and the case remanded to the trial court with instructions to enter a judgment of acquittal for that offense.

RESPECTFULLY SUBMITTED

/S/ Ray Bass
_____

RAY BASS, ATTORNEY
SBN 01884000

120 WEST 8TH STREET
GEORGETOWN, TEXAS 78626
TEL: 512-863-8788
FAX: 512-869-5090

Email: ray@raybass.com

## CERTIFICATE OF COMPLIANCE

Pursuant to RULE 9.4(i)(3), TEXAS RULES OF APPELLATE PROCEDURE, the undersigned attorney of record for appellant certifies that Appellant's Brief, with the exception of those parts excluded by RULE 9.4(i)(1), contains LESS THAN 15,000 words.

/S/ Ray Bass
_____

RAY BASS, ATTORNEY

## CERTIFICATE OF SERVICE

I hereby certify that a copy of Appellant's Brief was delivered to JOHN C. PREZAS, ASSISTANT DISTRICT ATTORNEY for Williamson County, Texas, 404 S. Martin Luther King Street, Georgetown, Texas, 78626, by email to jprezas@wilco.org on April 15, 2015, and by also depositing a copy of same in the United States Mail.


/S/ Ray Bass

_____

RAY BASS, ATTORNEY